1

2

3

4          **UNITED STATES DISTRICT COURT**

5             **DISTRICT OF NEVADA**

6                    * * *

7    JULIAN FLORES MARQUEZ,            Case No. 2:25-cv-02203-RFB-NJK
     ISRAEL GARCIA PLANCARTE,
8                                      **ORDER**
              Petitioners,
9
       v.
10
11   JASON KNIGHT, *et al*.,

12            Respondents.

13

14

15   **I.    INTRODUCTION**

16          This case is one of a rapidly growing number before this Court challenging the federal

17   government's reading of the Immigration and Nationality Act (INA) to authorize mandatory

18   detention of all noncitizens charged with entering the United States without inspection.[1] The

19   _____

20          [1] This Court has already granted petitioners relief—both preliminary and on the merits—
     in thirty-two similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-
21   EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-
     RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-
22   RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-
     RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-
23   RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-
     BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-
24   01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA,
     2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-
25   EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-
     RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025
26   WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-
     NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025
27   WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC,

28

executive branch now takes the position that the INA, specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatory, no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate, individualized interest in detaining them.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision

2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-cv-02139-RFB-BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-cv-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025); Garcia-Arauz v. Noem, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); Silva Hernandez v. Noem, No. 2:25-cv-02304-RFB-EJY, 2025 WL 3470903 (D. Nev. Dec. 3, 2025); Reyes Cristobal v. Bernacke, No. 2:25-cv-02231-RFB-EJY, 2025 WL 3485770 (D. Nev. Dec. 4, 2025); Carrillo Fernandez v. Knight, No. 2:25-cv-02221-RFB-BNW, 2025 WL 3485800 (D. Nev. Dec. 4, 2025); Pilar Torres v. Bernacke, No. 2:25-cv-02270-RFB-EJY, 2025 WL 3514615 (D. Nev. Dec. 8, 2025); Nolasco-Gomez v. Noem, No. 2:25-cv-02217-RFB-DJA, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Ramirez-Contreras v. Noem, No. 2:25-cv-02218-RFB-EJY, 2025 WL 3514681 (D. Nev. Dec. 8, 2025); Rodas v. Noem, No. 2:25-cv-02216-RFB-BNW, 2025 WL 3514680 (D. Nev. Dec. 8, 2025); Perdomo-Gonzalez v. Noem, No. 2:25-cv-02121-RFB-EJY, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Hernandez Isidoro v. Bernacke, No. 2:25-cv-02312-RFB-NJK (D. Nev. Dec. 8, 2025); Serrano Gonzalez v. Knight, No. 2:25-cv-02081-RFB-BNW (D. Nev. Dec. 9, 2025); Morales Rondon v. Bernacke, No. 2:25-cv-01979-RFB-BNW (D. Nev. Dec. 9, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also, Patel v. McShane, No. CV 25-5975, 2025 WL 3241212, at *1 (E.D. Pa. Nov. 20, 2025) (collecting at least 282 decisions from district courts finding the application of §1225(b)(2)(A) to noncitizens residing in the United States unlawful). A nationwide class has also been certified, and declaratory relief granted to all class members holding that they are being detained without a bond hearing unlawfully. See Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

Petitioners are currently detained without the opportunity for release on bond in the custody of Federal Respondents at Nevada Southern Detention Center (NSDC), pursuant to this new detention "policy." They assert the application of § 1225(b)(2) to them is unlawful under the INA, and that their continued detention violates the Due Process Clause of the Fifth Amendment.[4] They seek a writ of habeas corpus requiring that they be released unless Respondents provide them each with an individualized bond hearing under § 1226(a). For the reasons set forth below, the Petition is granted and the Court orders Respondents to provide Petitioners constitutionally adequate bond hearings by **December 16, 2025**, or release them.

---

[4] Petitioners also include argument related to Respondents' automatic stay, however, the automatic stay has not been applied to Petitioners, as they acknowledge in their reply, noting that this argument was included in error by counsel. ECF No. 15 at 19.

## II.    PROCEDURAL HISTORY

On November 7, 2025, Petitioners filed their Petition for a Writ of Habeas Corpus. ECF No. 1. On November 10, 2025, the Court ordered Respondents to show cause why the Writ should not be granted and enjoined Respondents from transferring Petitioners out of the District of Nevada to preserve its jurisdiction over Petitioners' claims. ECF No. 6.

On November 12, 2025, Respondents' counsel filed a notice of appearance and their first motion for an extension of time to respond to the Order to Show Cause and file their Return to the Petition, citing the need for additional time due to the shutdown of the federal government and associated furloughs. ECF Nos 7, 9. Respondents' counsel filed a second motion for extension on November 18, 2025, requesting an additional 24 hours to file their Return. ECF No. 12. Petitioners opposed both requested extensions, noting that Respondents should have in their possession the documents necessary to answer the true cause of Petitioners' detention, and therefore, their search should not be complicated nor require additional time. ECF Nos. 9, 13.

On November 19, 2025, Respondents filed their Return to the Petition. ECF No. 14. Petitioners filed their Traverse on November 24, 2025, and filed a Motion for Preliminary Injunction on the same bases as the Petition on December 8, 2025. ECF Nos. 15-16.

The Court's Order follows.

## III.    BACKGROUND

### A.  Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's new statutory reading and mass detention "policy," set forth in its ruling in Escobar Salgado, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025).

The Court makes the following findings of fact relevant to Petitioners.

### B.  Petitioner Julian Flores Marquez

Petitioner Marquez is a 45-year-old citizen of Mexico who has resided continuously in the United States since 2001, when he entered without inspection. He is married, has three U.S. citizen

- 4 -

1    children ages 9, 14, and 15, and resided in Utah prior to detention. Petitioner's criminal history is

2    limited to a misdemeanor DUI conviction from 2006, which has since been resolved as Petitioner

3    completed all terms and conditions of probation, and dismissed assault charges.[5]

4          He has been detained by DHS since August 2025, when he was arrested in Salt Lake City,

5    Utah. ICE did not set bond and charged him with, *inter alia*, being inadmissible as "an alien present

6    in the United States without being admitted or paroled" and without valid immigration documents

7    in his possession pursuant to 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). Petitioner

8    requested review of his custody by an Immigration Judge (IJ). On November 3, 2025, an IJ in the

9    Las Vegas Immigration Court denied bond due to lack of jurisdiction based on <u>Hurtado</u>. ECF No.

10   1 at 30.

11         **C.  Petitioner Israel Garcia Plancarte**

12         Petitioner Plancarte is a 47-year-old citizen of Mexico who has resided continuously in the

13   United States since 2006, when he entered without inspection. He has two U.S. citizen children

14   and resided in Utah prior to detention. Petitioner's sole criminal history is an arrest for Public

15   Intoxication, a Class C misdemeanor, that led to his detention by ICE.

16         He has been detained by DHS since October 2025, when he was arrested in Salt Lake City,

17   Utah. ICE did not set bond and charged him with, *inter alia*, being inadmissible as "an alien present

18   in the United States without being admitted or paroled" pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).

19   Petitioner has not requested a bond redetermination before an IJ as it would be futile based on

20   <u>Hurtado</u>.

21

22   **IV.    LEGAL STANDARDS**

23         The Constitution guarantees that the writ of habeas corpus is "available to every individual

24   detained within the United States." <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 525 (2004) (citing U.S.

25   Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is

26   to provide an effective and speedy instrument by which judicial inquiry may be had into the legality

27

28         [5] Respondents do not assert that this conviction is the basis for Petitioner's detention. They
     assert that Petitioner Marquez is detained pursuant to § 1225(b)(2) and make no argument that
     another detention scheme, such as § 1226(c), applies to Petitioner.

of the detention of a person." <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. <u>Zadvydas v. Davis</u>, 533 U.S. 678, 687 (2001); <u>see also Demore v. Kim</u>, 538 U.S. 510, 517 (2003); <u>Trump v. J. G. G.</u>, 604 U.S. 670, 672 (2025) (describing immigration detainees' challenge to their confinement and removal as falling "within the 'core' of the writ of habeas corpus.") (<i>per curiam</i>) (citations omitted). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." <u>Yong v. I.N.S.</u>, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## V.    DISCUSSION

As an initial matter, the Court grants Respondents' Motions to Extend Time (ECF Nos. 8, 12) to file their Return, <i>nunc pro tunc</i>. Under Federal Rule of Civil Procedure 6(b), a court may "for good cause," extend a deadline so long as the request is made before the original deadline. Fed. R. Civ. P. 6(b)(1)(A). The Court finds that there was good cause sufficient to grant Respondents' extensions from November 14 to November 19, 2025, given that the federal government shutdown and its associated widespread furloughs ended on November 13, 2025, subsequent to the first request.

### A.  Jurisdiction

The Court has habeas jurisdiction to review Petitioners' challenge to the lawfulness of their detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. <u>See Escobar Salgado</u>, 2025 WL 3205356, at *8-10; <u>Hernandez Duran v. Bernacke</u>, 2:25-

1    cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (Nov. 19, 2025). In evaluating the jurisdiction

2    stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities

3    in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong

4    presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir.

5    2018) (*per curiam*) (internal quotations and citations omitted). In their Return to the Petition,

6    Respondents incorporate by reference their arguments in Morales Rondon v. Bernacke, No. 2:25-

7    cv-01979 (D. Nev. Oct. 15, 2025), which assert that Petitioners' habeas challenge to the lawfulness

8    of their detention is jurisdictionally barred by 8 U.S.C. §§ 1252(g), 1252(a)(5), and 1252(b)(9).

9    However, as this Court has previously ruled, and which is incorporated by reference herein,

10   Respondents' arguments under those jurisdiction stripping provisions of the INA are foreclosed

11   by Ninth Circuit and Supreme Court precedent. See Escobar Salgado, 2025 WL 3205356, at *8-

12   10.

### B.  Statutory Question

14   Petitioners first challenge the lawfulness of their detention under the INA. While

15   Respondents assert that § 1225(b)(2) applies to Petitioners and mandates their detention without a

16   bond hearing, Petitioners argue that Respondents' interpretation of the statutory scheme of §§ 1225

17   and 1226 is flawed, contradicting both the statutory framework and the decades of agency practice

18   applying § 1226(a) to people like Petitioner. This Court agrees with Petitioners and incorporates

19   by reference its holding and findings in Escobar Salgado v. Mattos. 2025 WL 3205356, at *10-

20   22.

21   Petitioners are longtime U.S. residents—Petitioner Marquez has been in the U.S. for 24

22   years, and Petitioner Plancarte for 19 years—who were arrested and detained by ICE in Salt Lake

23   City, Utah, far from any port of entry. In addition, Petitioners have no criminal convictions that

24   would subject them to detention under § 1226(c). Accordingly, the Court finds Petitioners are

25   subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A), and

26   that the government's new interpretation and policy under that provision is unlawful.

### C.  Due Process

28   Petitioners also challenge their ongoing detention without the opportunity for release on

bond under § 1225(b)(2) as unconstitutional under the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioners' due process challenge on this basis. Again by incorporation only, Respondents assert that Petitioners' due process rights are not violated by detention without opportunity for release on bond, citing to the Supreme Court's upholding of detention without bond hearings under § 1226(c) in Demore. See ECF No. 21 at 2-3, 19 (citing Demore, 538 U.S. at 522, 531). However, Demore's holding was based on the government establishing a particular interest in detaining a limited class of noncitizens who had been convicted of *certain crimes* and were therefore statistically more likely to abscond from removal proceedings. Demore, 538 U.S. at 526-27. In addition, the Demore Court noted that detention without bond of noncitizens in that narrow class satisfied due process because the convictions had been obtained with the "full procedural protections our criminal justice system offer." Id. at 513-14. That interest is plainly not implicated in this case, where Petitioners have no criminal convictions that would place them in § 1226(c)'s narrow class. Furthermore, the government has not shown it has an individualized purpose in detaining either Petitioner.

This Court further incorporates by reference the legal authorities and standards set forth in Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioners are currently being detained without the opportunity for release on bond in violation of their procedural and substantive due process rights.

### 1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioners without the opportunity for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioners' interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioners' liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances).

Second, the Court considers "the risk of an erroneous deprivation of [Petitioners'] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. There are no existing procedures whatsoever for Petitioners to challenge their detention pending the conclusion of their removal proceedings without the opportunity for release on bond. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this lack of process is demonstrated by numerous prior cases before this Court where an IJ held a bond hearing for a petitioner prior to Hurtado and found that the government had not established a justification for detention. See, e.g., Escobar Salgado, 2025 WL 3205356; Aparicio v. Noem, No. 2:25-CV-

01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); <u>Berto Mendez v. Noem</u>, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025). Likewise, given that Petitioners have deep financial, familial, and community ties in the country, and that Respondents have not asserted that either of these individuals are dangerous or a flight risk, the Court finds that they are being arbitrarily and unjustifiably deprived of their liberty.

The additional procedures afforded under § 1226(a), including an individualized custody redetermination by an immigration judge, *i.e.*, a bond hearing, substantially mitigate the risk of erroneous deprivation of Petitioners' liberty, because those procedures require the government to establish that each Petitioner presents a flight risk or danger to the community. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." <u>Zadvydas</u>, 553 U.S. at 691-92. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Petitioner could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker." <u>Rodriguez Diaz</u>, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of § 1226(a) would render "the risk of erroneous deprivation . . . relatively small.") (citation omitted). As such, the second <u>Mathews</u> factor also weighs heavily in favor of granting Petitioners the procedural protections under § 1226(a).

The third and final <u>Mathews</u> factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." <u>Rodriguez Diaz</u>, 53 F.4th at 1188-89. These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any

individualized reason why detaining Petitioners is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." <u>Demore</u>, 538 U.S. at 532-33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducing* the fiscal and administrative burdens attendant to immigration detention. <u>Hernandez v. Sessions</u>, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the <u>Mathews</u> factors weigh heavily in factor of Petitioners, and therefore, their detention without the opportunity for release on bond violates their procedural due process rights.

2.  <u>Substantive Due Process</u>

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." <u>Zadvydas</u>, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioners of their physical liberty. Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary detention is grave cause for concern. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioners are currently detained in violation of their substantive due process rights. <u>See</u> <u>Escobar Salgado</u>, 2025 WL 3205356, at *25.

**D.  Scope of Relief**

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." <u>Id.</u> "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" <u>Id.</u> (quoting 28 U.S.C. § 2243).

Here, Petitioners face the specific harm of being detained for months without a bond hearing pursuant to § 1226(a). The Court finds that harm is remedied by ordering bond hearings by December 16, 2025. Given the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioners shall be immediately released until it is determined that their detention is warranted under 8 U.S.C. § 1226(a).

### E. Attorneys' Fees

The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioners' counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

## VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that the Petition (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioners with a bond hearing pursuant to 8 U.S.C. § 1226(a) no later than **<u>December 16, 2025</u>**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioners release on bond on the basis that they are is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). Thus, in the event that bond is granted, the Court **ORDERS** that Respondents are enjoined from invoking the automatic stay to continue Petitioners' detention, as the Court has already found the automatic stay unconstitutional and adopts that finding here. <u>Herrera v. Knight</u>, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *13 (D. Nev. Sept. 5, 2025)

In the event that bond is granted, Respondents are **ORDERED** to <u>immediately release</u> Petitioners. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, and therefore, the Court **FURTHER ORDERS** that Petitioners be afforded

1    45 days from the date of release to satisfy any monetary bond conditions.

2         **IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by

3    December 16, 2025, Petitioners shall be immediately released until it is determined that their

4    detention is warranted under 8 U.S.C. § 1226(a).

5         **IT IS FURTHER ORDERED** that the parties shall file a status report on the status of

6    Petitioners' bond hearings by December 17, 2025. The status report shall detail if and when the

7    bond hearings occurred, if bond was granted or denied in each case, and if denied, the reasons for

8    that denial.

9         **IT IS FURTHER ORDERED** that Petitioners' Motion for Preliminary Injunction (ECF

10   No. 16) is **DENIED** as moot.

11

12        **DATED:** December 9, 2025.

13

14                                              _____

15                                              **RICHARD F. BOULWARE, II**
                                                **UNITED STATES DISTRICT JUDGE**

16

17

18

19

20

21

22

23

24

25

26

27

28